UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WINDOW SPECIALISTS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 11-1610 (RMC) |
| FORNEY ENTERPRISES, INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**OPINION**

Plaintiff, sub-subcontractor Window Specialists, Inc., brought suit for breach of contract against Forney Enterprises, Inc., alleging that Window Specialists was wrongfully terminated and it is owed monies for labor and materials. Forney Enterprises countersued for breach of contract and indemnification, contending that the work done by Window Specialists was substandard. Plaintiff now moves for partial summary judgment. As explained below, the motion will be granted in part.

**I. FACTS**

The contract at issue here arose from a U.S. Army project to improve property at Fort McNair in Washington, D.C. General contractor, IIU Consulting Institute, Inc. (IIU), entered into a contract with the Army for the McNair improvements, and Hanover Insurance executed a performance bond on the contract. *See* Compl. [Dkt. 1], Ex. 1 (Performance Bond and Army/IIU Contract).[1] In December of 2010, IIU subcontracted with Forney Enterprises, Inc. (Forney), and Forney in turn subcontracted with Window Specialists, Inc. (WSI) for labor and material for the supply and installation of over 680 windows and over 60 doors at Fort McNair. Compl. ¶ 11; *id.*, Ex. 2 (Forney/WSI Contract).

---

[1] Plaintiff filed Exhibits 1-15 [Dkt. 1-1], as attachments to the Complaint.

The Army found various deficiencies in the work on the project and on May 25, 2011, the Government's contracting officer sent IIU a 10-day cure notice. *Id.*, Ex. 3 (Cure Notice). The Cure Notice stated:

> Work performed thus far by contractor has been substandard and poorly executed. Means and methods used for all aspects of work show lack of professional experience and unqualified technicians onsite performing the work. Demolition has been performed recklessly and restoration of openings cannot be done properly because the substrate has been butchered to the point that [it] inhibits the proper application of follow-on material, i.e., trim, stop, storm windows, etc.
>
> Additionally, new window units were installed but left unfinished for days allowing drafts and insects to enter despite attempts at sealing surrounds with insulation. Windows and storm windows were not measured and verified for proper sizing prior to demolition creating situations where ill-fitting windows and storm windows were installed regardless. . . . Poor joinery of trim had resulted in open joints filled with caulk to compensate for the poor cuts. Finish caulking was not tooled properly nor wiped down to achieve a finished appearance. . . .
>
> Some windows would be considerably square where as some would have a 2" space from the sill to bottom of the glazing stop on one side and have a 2 ¾" space on the other side. The fact that the holes for our balances to go into were unsquare was a huge issue in this situation. . . .
>
> Window manufacturer claims that many windows were not measured correctly and will not function correctly in their current state. Contractor has made negative comments onsite to me . . . about the quality of windows and that this product is not the correct application for the job. If this is so, why wasn't an alternative product that meets historical requirements and is a better fit offered prior to ordering 600 units that may not work?

*Id.*; *see also* Opp'n [Dkt. 43], Ex. 1 (Ukoh Aff.)[2] ¶ 8.

Forney claims that the majority of the issues in the Cure Notice had to do with WSI's poor workmanship. *See* Opp'n at 4. WSI hotly contests this, alleging that the deficiencies were all within IIU's scope of work because IIU did not properly supervise, prepare the window and door

---

[2] Frank Ukoh is the President of IIU.

2

openings, or perform the trim work after installation. Mot. for Partial Summ. J. [Dkt. 41-1] at 2-4. Under the Forney/WSI contract, WSI's scope of work excluded demolition and interior trim. *See* Forney/WSI Contract.

The window deficiencies were not corrected, and on June 29, 2011, IIU sent a notice of termination to Forney. Compl., Ex. 9 (Notice of Termination). On September 20, 2011, Forney formally terminated WSI. According to IIU, all window installation done by WSI was demolished, and all windows were reordered and reinstalled. Ukoh Aff. ¶ 20. IIU also asserts that none of the doors purchased by WSI could be used, and all of the doors were reordered. *Id*. ¶ 21. Because IIU claimed that WSI's work was deficient, it did not pay WSI's second, third, and fourth payment applications, totaling $936,967.00.[3]

WSI disputes that its work was in any way deficient and seeks payment on its contract with Forney. On September 7, 2011, WSI filed a Complaint against Forney, Hanover, IIU, and John McHugh, Secretary of the Army, alleging:

> Count I, breach of contract against Forney;
>
> Count II, unjust enrichment against Forney;
>
> Count III, performance of payment bond against Hanover;
>
> Count IV, injunctive relief against Forney, IIU, and Secretary McHugh; and
>
> Count V, injunctive relief against Forney.

*See* Compl. ¶¶

Subsequently, WSI voluntarily dismissed Secretary McHugh and general contractor IIU. *See* Notice of Dismissal [Dkt. 8]. WSI also voluntarily dismissed Count IV, which sought an injunction

---

[3] IIU paid WSI's first payment application in the amount of $26,000.00. While the Complaint alleges that $936,967.00 is due and owing to WSI, WSI later reduced its claim by $310,083.00, the amount IIU paid to WSI's suppliers. Praecipe [Dkt. 17].

to permit WSI to continue working on the project. *Id*. WSI also sought an injunction to prevent Forney from terminating WSI. *See* Compl., Count V. However, Forney terminated WSI on September 20, 2011, and WSI has waived its claim for injunction by not prosecuting it. In addition, the Court granted Forney's motion to dismiss Count II for failure to state a claim. *See* Order [Dkt. 27]. Thus, the Complaint remains pending against only two parties on two separate counts: against Forney on Count I for breach of contract and against Hanover on Count III for performance of the payment bond.

Forney filed a two-count Counterclaim, alleging breach of contract and indemnification. *See* Countercl. [Dkt. 23]. IIU informed Forney that it held Forney responsible for damages allegedly caused by WSI, including the cost to reprocure, repair, and complete WSI's work on the project. Ukoh Aff. ¶ 25. IIU settled its claims against Forney without a lawsuit. IIU agreed, in a written settlement agreement, to limit its recovery against Forney to "those amounts Forney recovers from WSI in this litigation, less Forney's lost profits." *Id*. ¶ 26; *see* Opp'n, Ex. 3 (Settlement Agreement).

WSI seeks partial summary judgment against Forney on the following grounds: (1) Count II of Forney's Counterclaim, seeking indemnification, should be dismissed as unripe; (2) Count I of Forney's Counterclaim, for breach of contract, should be dismissed because Forney's damages were caused by IIU and not by WSI; (3) because Forney does not have standing to sue for damages suffered by IIU, Forney's damages should be limited to lost profits; and (4) WSI is entitled to judgment in the amount of $61,342.36 for payment made by the Army to IIU for materials supplied by WSI.[4] *See* Mot. Partial Summ. J. Summary judgment will be granted on the first and third grounds.

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[4] WSI makes this claim even though IIU is no longer a defendant in this suit.

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

#### A. Counterclaim Count II, Indemnification

Count II of the Counterclaim, which seeks indemnification, has not yet accrued and is not yet ripe for decision. Under the U.S. Constitution, federal courts are limited to deciding "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). To show that a claim is ripe, a litigant must demonstrate (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties caused by withholding court consideration. *Nat'l Treasury Employees Union v. Chertoff*, 452 F.3d 839, 854 (D.C. Cir. 2006) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). A claim "is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union*

5

*Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985)). By requiring that claims be ripe before deciding them, courts promote judicial economy, avoid becoming entangled in abstract disputes, and ensure a record adequate to support an informed decision when a case is heard. *Abbott Labs.*, 387 U.S. at 149.

Federal courts have routinely found that "indemnity claims are unripe until the alleged indemnitee's liability has been fixed by a judgment or settlement." *Pardee v. Consumer Portfolio Servs., Inc.*, 344 F. Supp. 2d 823, 836 (D.R.I. 2004). Thus, an indemnity claim "does not accrue until the party seeking indemnification is held liable and makes a payment." *Casanova v. Marathon Corp.*, 256 F.R.D. 11, 14 (D.D.C. 2009); *see also* 42 C.J.S. Indemnity § 54 (2005) ("Generally, . . . an indemnitee is not entitled to recover under the agreement until he has made an actual payment or has otherwise suffered an actual loss.")

Forney contends that its right to indemnity in fact has accrued because it reached a settlement with IIU. An examination of the agreement, however, reveals that it did not actually fix liability and did not cause Forney to suffer any actual loss. The agreement, titled "Liquidating Settlement Agreement," provided:

> FEI [i.e., Forney] has acknowledged liability to IIU for IIU's increased costs on the Project associated with FEI and WSI's termination and IIU's reprocurement, completion and correction of WSI's work on the Project, and has agreed to pursue IIU's asserted damages against WSI in the Litigation. Accordingly, FEI and IIU have agreed to liquidate FEI's liability in such amount at FEI may recover from WSI in the Litigation for FEI's liability to IIU, less FEI's lost profits.

Settlement Agreement ¶ 2; *see also* Ukoh Aff. ¶ 26 (IIU agreed to "limit its recovery against FEI to those amounts FEI recovers from WSI in this litigation, less Forney's lost profits.").

The Settlement Agreement is a chimera, a ploy to give the illusion that IIU and Forney have reached a fixed settlement. However titled, the terms of the agreement reveal that the IIU's claim

6

against Forney has not been liquidated at all, as it does not set any particular sum that Forney is required to pay IIU. The agreement cannot be said to have "fixed" Forney's liability, *see Pardee*, 344 F. Supp. 2d at 836, to have caused Forney to suffer any "actual loss," *see* 42 C.J.S. Indemnity § 54, or to have caused Forney to make payment to IIU, *see Casanova*, 256 F.R.D. at 14.

Because the liability of Forney, as indemnitee, has not been fixed by judgment or settlement, Forney's claim for indemnification against WSI is not ripe. Accordingly, Count II of the Counterclaim (indemnification) will be dismissed as unripe.

### B. Counterclaim Count I, Breach of Contract

#### 1. Summary Judgment Based on Causation Theory

WSI also seeks summary judgment on Counterclaim Count I, breach of contract, asserting that Forney alleges damages *caused by IIU*, and not by WSI, and thus WSI cannot be held liable. The essential elements of a contract are "competent parties, lawful subject matter, legal consideration, mutuality of assent and mutuality of obligation." *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1445, 1450 (D.C. Cir. 1996) (citations omitted). To state a claim for breach of contract, a party must allege that a contract existed, that he performed his contractual obligations, that the other party breached the contract, and that he suffered damages due to the breach. *Park v. Arnott*, Civ. No. 89-3257(RCL), 1992 WL 184521, *4 (D.D.C. July 14, 1992). "Breach is 'an unjustified failure to perform all or any part of what is promised in a contract' entitling the injured party to damages." *Fowler v. A & A Co.*, 262 A.2d 344, 347 (D.C. 1970) (citations omitted). "The party asserting the existence of an enforceable contract . . . bears the burden of proof on the issue of contract formation." *Virtual Def. & Dev. Int'l, Inc. v. Rep. of Moldova*, 133 F. Supp. 2d 9, 17 (D.D.C. 2001).

WSI alleges that Forney lost profits due to IIU's termination of the IIU/Forney contract, and not due to any action by WSI. WSI's allegation is disputed. The parties agree that: the Army

7

identified deficiencies on the project, including problems with windows and doors; when the deficiencies were not corrected, IIU terminated Forney; and Forney terminated WSI and thus WSI did not complete its work on the project. Having said that, whether the identified deficiencies were due to WSI's poor workmanship, poor workmanship by others in preparing the window and door openings and installing the trim, or both, is a matter of dispute. Further, the amount of lost profits, if any, suffered by Forney is in dispute. Summary judgment will be denied on this ground.

### 2. Request to Limit Forney's Damages to Lost Profits

WSI also seeks to limit Forney's damages to lost profits because Forney has not alleged that it has suffered any actual loss, other than lost profits. Forney insists that to survive summary judgment, it does not need to prove its damages but only needs to demonstrate that damages exist and are not speculative. *See Cormier v. D.C. Water & Sewer Auth.*, 959 A.2d 658, 667-68 (D.C. 2008). Forney contends that its damages exist and are not speculative, and that they include the costs of curing WSI's allegedly defective work on the project. IIU informed Forney that it "held" Forney responsible for the cost to reprocure, repair, and complete WSI's work on the project, *see* Ukoh Aff. ¶ 25, and IIU settled its claims against Forney by agreeing to limit its recovery against Forney to "those amounts Forney recovers from WSI in this litigation, less Forney's lost profits," *see id*. ¶ 26; Settlement Agreement.

While couched in less precise language, WSI's objection to Forney's counterclaim for damages is that Forney lacks standing to assert a loss that has been suffered by IIU. To have standing under Article III of the U.S. Constitution, a plaintiff must establish: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth,*

*Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The focus is on the qualifications and status of the party seeking to bring his complaint before a federal court and not on the issues he wishes to have resolved." *McKinney v. U.S. Dep't of Treasury*, 799 F.2d 1544, 1549 (Fed. Cir. 1986) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 28 (1976)).

Forney's allegation that IIU "held" it responsible for the cost to correct and complete the windows and doors on the project is evidenced by a "settlement agreement" that does not settle anything at all. IIU has not demanded payment of any particular sum from Forney for the costs of curing the problems; Forney has not paid IIU for such costs; IIU settled its claims against Forney by agreeing to limit its recovery against Forney to "those amounts Forney recovers from WSI in this litigation, less Forney's lost profits," *see* Ukoh Aff. ¶ 26; Settlement Agreement. Forney's alleged injury, *i.e.* the cost of curing the window/door deficiencies, is not an injury in fact because it is not "concrete and particularized." Also, due to the settlement agreement, the alleged injury is not "actual or imminent." Under the settlement agreement, if Forney does not recover damages in excess of its lost profits, it does not owe IIU anything. Because Forney has not alleged an injury in fact, it lacks standing to pursue a claim against WSI for the costs of curing the alleged deficiencies on the project caused by WSI. Forney's damages on its breach of contract claim will be limited to lost profits.

### 3. WSI's Claim for Judgment In the Amount of $61,342.36

WSI also claims that it is entitled to judgment against Forney in the amount of $61,342.36. The Army paid IIU $371,364.11 for the purpose of paying suppliers. IIU used these funds to pay two of WSI's suppliers a total of $310,021.75 as follows: it paid Malta Windows & Doors $279,938.75 and it paid Diamond Doors $30,083.00. WSI claims, without authority, that Forney should be adjudged liable for the remainder of this fund, *i.e.*, $61,342.36. Forney was a stranger to the

9

transaction between the Army and IIU and between IIU and the suppliers, Malta and Diamond. WSI has not pointed to undisputed facts that would lead the Court to conclude that Forney is liable on summary judgment for this amount.

## IV. CONCLUSION

For the reasons set forth above, the motion for partial summary judgment [Dkt. 41] filed by WSI will be granted in part and denied in part. Count II of the Counterclaim [Dkt. 23], seeking indemnification, will be dismissed. Count I of the Counterclaim, seeking damages for breach of contract, will be limited to lost profits. Genuine issues of material fact exist as to the remainder. A memorializing Order accompanies this Opinion.


Date: March 18, 2014                                /s/
                                          ROSEMARY M. COLLYER
                                          United States District Judge