UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WINDOW SPECIALISTS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 11-1610 (RMC) |
| FORNEY ENTERPRISES, INC., *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**OPINION**

This case has devolved to breach of contract claims between Window Specialists, Inc., and Forney Enterprises, Inc. Forney, a subcontractor on an Army project at Fort McNair in Washington, D.C., contracted with Window Specialists for labor and materials for the installation of windows and doors on the project. The Army found deficiencies with the window and door work, and when the deficiencies remained uncured, Forney terminated Window Specialists. Window Specialists sues for breach of contract, claiming that it was wrongfully terminated and that Forney owes it for labor and materials expended on the project. Window Specialists asserts that any deficiencies were the fault of others, including the general contractor, IIU Consulting Institute, Inc. Forney countersues for breach of contract, arguing that Window Specialists' work was substandard and that the work had to be torn out and redone. Forney contends that Window Specialists should pay for the tear-out and reinstallation work. A pretrial conference is scheduled on June 23, 2014, and a bench trial is scheduled to commence on July 14, 2014.

Window Specialists filed a motion in limine to exclude the testimony of expert witnesses. Forney filed a motion in limine to exclude (1) evidence regarding the general

contractor, IIU, and its demolition work in preparing the window openings and (2) evidence regarding the Army's payments to IIU. The motion filed by Window Specialists will be denied. The motion filed by Forney will be granted in part and denied in part; the portion granted is the request to exclude evidence regarding the Army's payments to IIU.

## I. FACTS

### A. Background

When the Army decided to improve certain buildings at Fort McNair in Washington, D.C., it hired IIU Consulting Institute, Inc. (IIU) as its general contractor and Hanover Insurance executed a performance bond on the contract. *See* Compl. [Dkt. 1], Ex. 1 (Performance Bond and Army/IIU Contract).[1] In December 2010, IIU subcontracted a portion of its work to Forney. Forney in turn subcontracted with Window Specialists to provide labor and materials for the installation of over 680 windows and over 60 doors at Fort McNair. Compl., Ex. 2 (Forney/WSI Contract).[2]

The Army found various deficiencies in the work on the project and on May 25, 2011, the Government's contracting officer sent IIU a ten-day cure notice. Compl., Ex. 3 (Cure Notice). The Cure Notice stated:

> Work performed thus far by contractor has been substandard and poorly executed. Means and methods used for all aspects of work show lack of professional experience and unqualified technicians onsite performing the work. Demolition has been performed recklessly and restoration of openings cannot be done properly because the substrate has been butchered to the point that [it] inhibits the proper application of follow-on material, i.e., trim, stop, storm windows, etc.

---

[1] Plaintiff filed Exhibits 1-15 [Dkt. 1-1], as attachments to the Complaint.

[2] Window Specialists, Inc., is sometimes referred to as WSI, and Forney Enterprises, Inc., is sometimes referred to as FEI.

> Additionally, new window units were installed but left unfinished for days allowing drafts and insects to enter despite attempts at sealing surrounds with insulation. Windows and storm windows were not measured and verified for proper sizing prior to demolition creating situations where ill-fitting windows and storm windows were installed regardless. . . . Poor joinery of trim had resulted in open joints filled with caulk to compensate for the poor cuts. Finish caulking was not tooled properly nor wiped down to achieve a finished appearance. . . .
>
> Some windows would be considerably square where as some would have a 2" space from the sill to bottom of the glazing stop on one side and have a 2 ¾" space on the other side. The fact that the holes for our balances to go into were unsquare was a huge issue in this situation. . . .
>
> Window manufacturer claims that many windows were not measured correctly and will not function correctly in their current state. Contractor has made negative comments onsite to me . . . about the quality of windows and that this product is not the correct application for the job. If this is so, why wasn't an alternative product that meets historical requirements and is a better fit offered prior to ordering 600 units that may not work?

*Id*.

Forney claims that the majority of the deficiencies were the result of Window Specialists' poor workmanship in installing windows and doors. Window Specialists contests this, alleging that the deficiencies were the result of substandard pre-installation demolition of the window and door openings and inferior post-installation trim work. Compl., Ex. 13 (Letter from WSI's President Robert Carlson dated July 21, 2011) (main causes of the problems were the installation of insulation behind the jambliners as mandated by IIU and faulty demolition, neither of which was WSI's fault). By contract, Window Specialists' scope of work excluded, *inter alia*, interior caulking, demolition, insulation, patching, and interior trim. *See* Forney/WSI Contract, Ex. A (Scope of Work) at 2-3.

Window Specialists became aware of the Army's Cure Notice at a meeting held by the Government's contracting officer in May 2011. *See* Am. Countercl., Ex. 4 (Letter from

3

Forney to WSI dated June 24, 2011) [Dkt. 23-4] at 1. A corrective action plan was developed to allow WSI to demonstrate that it could perform the job starting on June 20, but WSI only had two men present that day. *Id*. On June 24, 2011, Forney gave Window Specialists formal notice that it was required to cure within three business days or it would be terminated for default. *Id*.

The window deficiencies were not corrected, and on June 29, 2011, IIU sent a notice of termination for default to Forney. Compl., Ex. 9 (Notice of Termination). At the time of termination, Window Specialists had installed approximately 100 of 684 windows and 66 doors on the project. *See* Forney Mot. to Exclude Evidence [Dkt. 48] at 2. On September 8, 2011, Forney formally terminated Window Specialists for default. Am. Countercl. [Dkt. 23], Ex. 6 (Letter from Forney to WSI dated Sept. 8, 2011) [Dkt. 23-6]. The termination letter to Window Specialists stated:

> WSI was forwarded a copy of the Government's May 25 cure notice, and participated in meetings with IIU and the Government related to the same. When apprised of the numerous problems with its work, however, WSI failed to recognize or acknowledge that problems existed, and failed to make adequate efforts to timely correct and complete its defective work and performance. . . . Accordingly, [Forney] hereby terminates [Window Specialists'] subcontract for default, pursuant to Article 9.1.1 of the subcontract . . . . Pursuant to Articles 2.4 and 9.1 of the subcontract, [Forney] will seek reimbursement from [Window Specialists] for all costs, expenses, fees and damages attributable to [Window Specialists'] default, including but not limited to liability incurred to third parties, increased costs of performance, additional reprocurement costs, damages for delay, consultants' and attorneys' fees, and other related costs.
>
> You are further advised that in order to mitigate damages incurred, and in order to ensure the payment of all suppliers for the Project, IIU has made payment directly to Malta for all windows and other materials and/or services provided by Malta to [Window Specialists] for the Project.

*Id*. at 1-2 (emphasis omitted). The termination letter referenced Article 2.4 of the Forney/WSI Contract, which provides that (1) Window Specialists bears responsibility and liability for all

4

supervision, labor, and materials for the Work (as defined in the Forney/WSI Contract, Cover Sheet and Ex. A, titled "Scope of Work"), and that (2) if Window Specialists breaches, it shall be liable for all costs and attorney fees that Forney incurs. The termination letter also referenced Article 9.1, which applies to termination for default. Article 9.1 defines actions/omissions that constitute default, prescribes for notice of default and a three-day cure period, and provides that, if uncured, Forney may complete the Work and Window Specialists shall become liable for the costs. If Forney wrongfully terminates for default under Article 9.1.1., the termination is deemed to be one of "convenience." *See* Forney/WSI Contract, Art. 9.1.3. If the contract is terminated for convenience, then Window Specialists shall be paid for the Work it performed and shall not be liable for the costs of completing the job. Forney/WSI Contract, Art. 10.[3] In this litigation, Forney asserts that it terminated the Contract for default; Window Specialists contends that such termination was wrongful and that the termination for convenience provision applies.

After IIU terminated Forney on June 29, 2011, IIU completed the Work. IIU, itself and/or through subcontractors, demolished all of the windows installed by Window Specialists, reordered new windows, and installed those. Opp'n to Partial MSJ [Dkt. 43], Ex. 1 (Aff. of Frank Ukoh, President of IIU) (Ukoh Aff.) ¶ 20. All of the doors that Window Specialists had supplied were reordered. Ukoh Aff. ¶ 21. Because IIU claimed that Window Specialists' work was deficient, it did not pay Window Specialists' second, third, and fourth payment applications, totaling $936,967.00.[4] Window Specialists gave notice to Hanover that

---

[3] The full text of Articles 2.4, 9.1, and 10 are set forth in an Appendix to this Opinion.

[4] IIU paid WSI's first payment application in the amount of $26,000.00. While the Complaint alleges that $936,967.00 is due and owing to WSI, WSI later reduced its claim by $310,083.00, which represents the amount IIU paid directly to WSI's suppliers. Praecipe [Dkt. 17].

5

$936,967.00 was due and owing on the project. Compl., Ex. 14 (WSI notice to Hanover dated Aug. 8, 2011).

### B. Procedural History

On September 7, 2011, Window Specialists filed suit against Forney, Hanover, IIU, and Army Secretary McHugh, alleging numerous Counts. Subsequently, Window Specialists voluntarily dismissed IIU and the Army. *See* Notice of Dismissal [Dkt. 8]. Certain counts were also dismissed, and the Complaint remains pending against Forney on Count I (breach of contract) and against Hanover on Count III (performance of the payment bond).[5] Forney filed a Counterclaim alleging breach of contract (Count I) and indemnification (Count II). *See* Countercl. [Dkt. 23]. The Court dismissed Count II, indemnification, as unripe because the claim had not yet accrued.[6] *See* Op. [Dkt. 45] at 6-7.

---

[5] The Complaint originally included Counts II (unjust enrichment) and Counts IV and V (seeking injunctive relief), but those Counts have been dismissed or waived. *See* Notice of Dismissal [Dkt. 8] (voluntary dismissal of Count IV); Op. [Dkt. 45] at 4 (deeming Count V to be waived); Order [Dkt. 27] (dismissing Count II).

[6] Forney argued that its right to indemnity had accrued because it reached a settlement with IIU. The agreement, titled "Liquidating Settlement Agreement," provided:

> FEI [i.e., Forney] has acknowledged liability to IIU for IIU's increased costs on the Project associated with FEI and WSI's termination and IIU's reprocurement, completion and correction of WSI's work on the Project, and has agreed to pursue IIU's asserted damages against WSI in the Litigation. Accordingly, *FEI and IIU have agreed to liquidate FEI's liability in such amount as FEI may recover from WSI in the Litigation for FEI's liability to IIU, less FEI's lost profits.*

Opp'n to Partial MSJ [Dkt. 43], Ex. 3 (Settlement Agreement) ¶ 2 (emphasis added). The Court determined that the right to indemnity had not accrued because the Settlement Agreement did not fix Forney's liability, cause Forney to suffer a loss, or cause Forney to pay IIU. Op. [Dkt. 45] at 6-7.

The Court also limited Forney's recovery on Count I of the Counterclaim (breach of contract) to lost profits. *See id*. at 8-9. Forney asserted that its damages included lost profits *and* the cost of curing the defective work because IIU allegedly held Forney responsible for the cost to correct and complete the windows and doors on the project. *See* Ukoh Aff. ¶ 25. However, IIU did not demand payment of any particular sum from Forney for its cost to cure, and Forney did not pay IIU anything for such cost. Instead, IIU settled its claims against Forney by agreeing to limit its recovery against Forney to the amount "Forney recovers from Window Specialists in this litigation, less Forney's lost profits," *see* Settlement Agreement ¶ 2. Forney's alleged injury, *i.e*. the cost of curing the window/door deficiencies, is not an injury in fact because it is not concrete and particularized. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Due to the settlement agreement, Forney's injury is not actual or imminent because, if Forney does not recover damages in excess of its lost profits, it does not owe IIU anything. *See id*. The Court concluded that because Forney had not alleged an injury in fact with respect to IIU's cost of curing the alleged deficiencies, Forney lacked standing to sue Window Specialists for IIU's costs. Op. [Dkt. 45] at 8-9. Therefore, any potential damages on Forney's breach of contract claim were limited to lost profits. *Id*.

**C. Motions in Limine**

Window Specialists filed a motion in limine to exclude the testimony of expert witnesses due to lack of proper disclosure, which Forney opposes. *See* WSI Mot. to Exclude Experts [Dkt. 47]; Forney Opp'n [Dkt. 50]. Forney filed a motion in limine to exclude on relevance grounds (1) evidence regarding the general contractor, IIU, and its demolition work in preparing the window openings and (2) evidence regarding the Army's payments to IIU. *See* Forney Mot. to Exclude Evidence [Dkt. 48]; WSI Opp'n [Dkt. 49]; Forney Reply [Dkt. 51].

7

## II. ANALYSIS

### A. Window Specialists' Motion to Exclude Expert Testimony

Window Specialists complains that Forney did not disclose an expert report for its witness, Robert Donnelly, and that his testimony should be excluded. When a party seeks to call an expert witness at trial, he must disclose to the opposing party the identity of the expert, *see* Fed. R. Civ. P. 26(a)(2)(A), and if the witness is "one retained or specially employed to provide expert testimony," the disclosure must include a report,[7] *see* Fed. R. Civ. P. 26(a)(2)(B). If the witness is *not* an expert required to provide a report, the disclosure must state:

> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
>
> (ii) a summary of the facts and opinions to which the witness is expected to testify.

---

[7] An expert report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B)(i)-(vi).

Fed. R. Civ. P. 26(a)(2)(C). Federal Rule of Civil Procedure 37(c)(1) provides for the exclusion at trial of any information not disclosed pursuant to Rule 26(a), unless the failure to disclose is substantially justified or harmless.

Forney insists that it was not required to disclose a report because Mr. Donnelly is not a witness "retained or specially employed to provide expert testimony." *See* Fed. R. Civ. P. 26(a)(2)(B). Mr. Donnelly was retained by the replacement window supplier to be in charge of installation of the windows and by IIU to perform demolition work for the windows. Forney Opp'n [Dkt. 50] at 6. Forney states that it will call Mr. Donnelly primarily as a fact witness, but that he "may offer expert opinions on certain issues." *Id*. Thus, it identified him, in its Rule 26(a)(2) expert disclosure, as a witness who may provide both fact and expert testimony. *Id*. Forney has informed Window Specialists of Mr. Donnelly's background experience and anticipated that he will testify regarding: (1) general door and window product specifications; (2) general installation of doors and windows; (3) the pricing of materials and labor related to the installation of doors and windows on construction projects; (4) the quality, timeliness and the reasonableness of the costs of work performed by Window Specialists; (5) scope of work required on the Project and related specifications; (6) unreasonable and unjustified costs demanded by Window Specialists; (7) status and state of completion of Window Specialists' work at the time its work on the project was discontinued; (8) work required to remedy, correct and complete Window Specialists' scope of work on the project and the reasonableness of the costs to perform the same; and (9) materials supplied to the project. Numbers 1 through 6 of this list would constitute expert testimony, if not the remainder.

Given Mr. Donnelly's dual role as a fact and opinion witness, Forney contends that he is not "retained or specially employed to provide expert testimony" within the

9

requirements of Rule 26(a)(2)(B). As a result, Forney defends its disclosure of only the subject matters on which Mr. Donnelly is expected to present evidence and a summary of the facts and opinions expected to be presented in his testimony. Window Specialists elected to forego a deposition of Mr. Donnelly.

Under Federal Rule of Evidence 701, a lay witness may testify only as to opinions that are "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Mr. Donnelly will have to be qualified as an expert before he can present opinions that are outside the scope of Rule 701 and within the scope of Rule 702.

Under Federal Rule of Evidence 702, a trial court has a "special obligation" to ensure that expert testimony is relevant *and* reliable. *Kuhmo Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *see also Meister v. Med. Eng'g Corp.*, 267 F.3d 1123, 1126 (D.C. Cir. 2001) ("Under *Daubert* [*v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)], the district court is required to address two questions, first whether the expert's testimony is based on 'scientific knowledge' and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'"). Even so, the presumption under the Rules is that expert testimony is admissible; once a proponent has made the requisite threshold showing, further disputes go to weight, not admissibility. *Daubert*, 509 U.S. at 588. Mr. Donnelly's unique situation—neither an employee of, nor a retained expert by, any party to the litigation but having necessary and direct fact knowledge of the construction project—fully supports Forney's treatment of him as a non-retained fact witness, who may be qualified to provide expert opinion

10

testimony and from whom no formal report is required. The motion to exclude Mr. Donnelly's testimony will be denied.

Forney also identified two retained experts, Ronald Fermano and Robert Peterson. Subsequently, Forney withdrew the designation of Mr. Fermano. Forney Opp'n [Dkt. 50] at 3 n.1. Window Specialists seeks to exclude the testimony of Mr. Peterson, arguing that his report merely provides legal conclusions that are properly decided by the trier of fact. The Peterson Report states:

> I have concluded that FEI does not owe WSI any money under the default termination. As such, WSI's claim it has failed to be paid for its work by FEI is unsupported. On the contrary, the information available to me indicates that WSI owes FEI approximately $198,600. With respect to any potential termination for convenience damages, WSI has failed to provide any supporting documentation.

*See* Mot. to Exclude Experts [Dkt. 47], Ex. 1 (Peterson Report) [Dkt. 47-2] at 9.

While Rule 702 "permits the admission of expert testimony that will help the trier of fact to understand the evidence or to determine a fact in issue," it is well-established that "expert testimony consisting of legal conclusions will not be permitted because such testimony merely states what result should be reached, thereby improperly influencing the decisions of the trier of fact and impinging upon the responsibilities of the court." *United States ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 98 (D.D.C. 2002) (internal quotation marks and citation omitted). However, the Court's gatekeeper role is "significantly diminished" in a bench trial because "there is no risk of tainting the trial by exposing a jury to unreliable evidence." *United States v. H&R Block, Inc.*, 831 F. Supp. 2d 27, 30 (D.D.C. 2011) (quoting *Whitehouse Hotel Ltd. P'ship v. Comm'r of Internal Revenue*, 615 F.3d 321, 330 (5th Cir. 2010)).

Because this case will be tried to the Court, there is no danger of jury confusion from Mr. Peterson's testimony. Further, the Court will make its own findings of fact and conclusions of law. The motion to exclude expert testimony from Mr. Peterson will be denied.

**B. Forney's Motion to Exclude Evidence**

Forney filed a motion in limine to exclude (1) evidence regarding the general contractor, IIU, and its demolition work in preparing the window openings and (2) evidence regarding the Army's payments to IIU. Forney contends that certain facts and arguments raised by Window Specialists are irrelevant, likely to confuse the Court and cause delay, and thus should be excluded.

Federal Rule of Evidence 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Relevant evidence is admissible, *see* Fed. R. Evid. 402, unless "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence," Fed. R. Evid. 403.

**1. Evidence Regarding IIU and Demolition Work**

Window Specialists claims that the deficiencies on the project were the result of IIU's poorly performed demolition work on the window and door openings. Forney argues that Window Specialists was required to provide notice of any issues that would prevent or impair its ability to perform, *see* Forney/WSI Contract Art. 13.2.2, and because no such notice was provided, evidence regarding IIU's demolition work should be excluded as irrelevant and/or confusing and misleading. Article 13.3.2 of the Forney/WSI Contract provides:

> Subcontractor shall review the critical dimensions and elevations of its Work, and verify the previous Work as to its relationship to

12

the Subcontractor's Work. The Subcontractor shall promptly submit a written statement to FEI noting any discrepancies or unacceptable conditions prior to commencing with the Work of this Subcontract. Do not attach to or cover over any material which is not properly installed.

First, the issue of whether such notice was provided is contested. *See* WSI Opp'n [Dkt. 49] at 8. Second, while the Contract provides that Window Specialists was required to "promptly submit a written statement to [Forney] noting any discrepancies or unacceptable conditions prior to commencing with the Work," it does not specify the consequences of a failure to provide notice. Forney *presumes* that the failure to provide such notice precludes Window Specialists from denying default due to such "discrepancies or unacceptable conditions." That is a matter of fact and law to be argued to the Court at trial. The evidence will be admitted.

### 2. Evidence Regarding the Army's Payments To IIU

Forney also seeks to exclude evidence regarding IIU's invoices to the Government and the Government's payments to IIU because the Government and IIU are not parties to this litigation or to the Forney/WSI Contract that is the basis of this dispute.[8] This portion of Forney's motion is well-founded.

Previously, Window Specialists sought summary judgment against Forney in the amount of $61,342.36—a sum representing funds paid to IIU by the Army. The Army paid IIU $371,364.11 for suppliers and IIU used these funds to pay directly two of WSI's suppliers a total of $310,021.75.[9] WSI claimed, without authority, that Forney should be adjudged liable for the remainder of this fund, *i.e.*, $61,342.36. The Court denied the request for judgment because

---

[8] While Window Specialists originally named both the Army and IIU as defendants, they were later voluntarily dismissed. *See* Notice of Dismissal [Dkt. 8]. Neither Window Specialists nor Forney ever sought to add IIU as a third party defendant, and IIU has never sought to intervene.

[9] The Army paid Malta Windows & Doors $279,938.75 and it paid Diamond Doors $30,083.00.

Forney was a stranger to the transaction between the Army and IIU and between IIU and the suppliers, and there was no evidence that would lead to the conclusion that Forney was somehow indisputably liable for monies the Army paid to IIU. Op. [Dkt. 45] at 9-10.

Misreading Forney's motion, Window Specialists does not directly oppose it. Instead, Window Specialists complains that the testimony of IIU is important and relevant to this case. But Forney does not seek to exclude all testimony by IIU. Window Specialists further contends that it should be permitted to introduce evidence that Forney failed to submit Window Specialists' payment applications or to otherwise obtain payment for Window Specialists. Forney concedes that such evidence is relevant, and it does not seek to exclude it. Forney Reply [Dkt. 51] at 4.

Window Specialists has not articulated any theory that would lead the Court to conclude that IIU's invoices to the Government and the Government's payments to IIU are relevant to this case. Forney's motion to exclude evidence will be granted on this ground only. Evidence regarding IIU's invoices to the Government and the Government's payments to IIU will be excluded at trial.

### III. CONCLUSION

The motion to exclude expert testimony filed by Window Specialists [Dkt. 47] will be denied. The motion to exclude evidence regarding IIU filed by Forney [Dkt. 48] will be granted in part and denied in part. Evidence regarding IIU's invoices to the Government and the Government's payments to IIU will be excluded at trial. A memorializing Order accompanies this Opinion.

Date: June 10, 2014                                       /s/
                                                  ROSEMARY M. COLLYER
                                                  United States District Judge

* * *

## Appendix

## Key Provisions of the Forney/WSI Contract

Article 2.4, Subcontractor Liability, provides in relevant part:

> 2.1.1 Subcontractor [defined as Window Specialists] hereby assumes the entire responsibility and liability for all Work, supervision, labor and materials provided hereunder, whether or not erected in place, and for all plant, scaffolding, hoisting, tools, equipment, supplies and other things provided by Subcontractor until final acceptance of the Work by the Owner, and shall at all times prosecute the Work in a good and workmanlike manner, with diligence and continuity; in the event of any loss, damage or destruction thereof from any cause, Subcontractor shall be liable therefor, and shall repair, rebuild and make good said loss, damage or destruction at Subcontractor's cost, except to the extent of any recoveries or payments from Builders Risk or property insurance, if any, applicable to such loss, damage or destruction.
>
> 2.4.2 Subcontractor shall be liable to FEI for all costs FEI incurs or becomes responsible for as a result of Subcontractor's failure to perform this Subcontract in Accordance with its terms. Subcontractor's failure to perform shall include the failure of its lower-tier subcontractors to perform. Subcontractor's liability shall include but not be limited to (1) damages and other delay costs payable by FEI to the Owner (including liquidated damages); (2) FEI's or its agents increased costs of performance, such as extended overhead and increased performance costs resulting from delays or improper Work; (3) warranty and rework costs; (4) liability to third parties; (5) excess reprocurement costs; (6) consultants' fees; and (7) attorneys' fees and related costs.

Article 9.1, Subcontractor's Failure to Perform; Termination for Default, provides:

> 9.1.1 If, in the opinion of FEI, Subcontractor shall at any time (a) refuse or fail to provide sufficient properly skilled workers, adequate supervision or materials of the proper quality, (b) fail in any material respect to prosecute the Work according to FEI's current schedule, (c) cause, by any action or omission, the stoppage or delay of or interference with the Work of FEI or of any other contractor or subcontractor, (d) fail to comply with any provision of this Subcontract or the Contract Documents, . . . then, after serving three (3) days' written notice, unless the condition specified in such notice shall have been eliminated within such

three (3) days, FEI, at its option, without voiding the other provisions of this Subcontract and without notice to the sureties and without prejudice to any other rights of FEI under the law, may (i) take such steps as are necessary to overcome the condition, in which case the Subcontractor shall be liable to FEI for the cost thereof (ii) terminate for default Subcontractor's performance of all or a part of the Subcontract Work, or (iii) obtain specific performance or interlocutory mandatory injunctive relief requiring performance of Subcontractor's obligations hereunder (it being agreed by Subcontractor that such relief may be necessary to avoid irreparable harm to FEI and/or the Owner).

9.1.2 In the event of termination for default, FEI may, at its option, (a) enter on the premises and take possession, for the purpose of completing the Work, of all materials and jobsite equipment of Subcontractor, (b) take assignment of any or all of Subcontractor's subcontracts, and/or (c) either itself or through others complete the Work by whatever method FEI may deem expedient. In case of termination for default, Subcontractor shall not be entitled to receive any further payment until the Work shall be fully completed and accepted by the Owner and payment in full made by the Owner. At such time, if the unpaid balance of the price to be paid shall exceed the expense incurred by FEI, including overhead and profit, such excess shall be paid by FEI to Subcontractor. If such amount shall exceed such unpaid balance, the Subcontractor shall pay FEI the difference on demand.

9.1.3 If FEI wrongfully exercises its option under Paragraph 9.1.1(i) that action shall be treated as a deductive change. If FEI wrongfully exercises its option under Paragraph 9.1.1(ii), that termination for default shall be considered a termination for FEI's convenience and Subcontractor shall be entitled to the applicable compensation provided in Article 10. Subcontractor's remedies under this Paragraph 9.1.3 shall be exclusive. Nothing herein shall bar withholdings by FEI permitted by other provisions of this Subcontract.

Article 10, Termination for Convenience, provides:

10.1 FEI shall have the right to terminate for convenience Subcontractor's performance of all or any part of the Work by providing Subcontractor with a written notice of termination for convenience, to be effective upon receipt by Subcontractor. If there has been a termination of FEI's Contract with the Owner, Subcontractor shall be paid the amount due from the Owner for its Work, as provided in the Contract Documents, after payment therefore by the Owner to FEI. If FEI's Contract has not been

terminated, Subcontractor shall be paid the reasonable value of the Work performed by Subcontractor prior to termination plus reasonable direct close-out costs, including jobsite overhead and profit on Work performed, but in no event shall Subcontractor be entitled to unabsorbed overhead, anticipatory profit or damages of any kind or nature, direct or indirect, incidental or consequential. If no Work has been performed by Subcontractor at the time of termination, Subcontractor shall be paid the sum of $100.00 for its undertaking an obligation to perform.

Article 13.3, Interface and Coordination, provides:

> 13.3.1 Subcontractor, as well as its sub-subcontractors and trades, shall cooperate and fully coordinate their Work with one another and all other subcontractors for the purpose of securing a complete Project as required by the project schedule.
>
> 13.3.2 Subcontractor shall review the critical dimensions and elevations of its Work, and verify the previous Work as to its relationship to the Subcontractor's Work. The Subcontractor shall promptly submit a written statement to FEI noting any discrepancies or unacceptable conditions prior to commencing with the Work of this Subcontract. Do not attach to or cover over any material which is not properly installed.

Exhibit A, Scope of Subcontractor's Work, excludes from the Work:

> **Exclusion:**
>
> 1. Premium time is excluded; however, overtime required to catch up with the progress due to delays on this subcontractor's part will be provided by this subcontractor at no extra cost to FEI.
>
> 2. Dumpster for general construction debris for the project to be provided by FEI.
>
> 3. Third party testing and inspection.
>
> 4. Interior caulking.
>
> 5. Any abatement of hazardous material.
>
> 6. Demolition, wood blocking, protection, cleaning, insulation, temporary enclosures, patching or painting.
>
> 7. Repair of existing materials that remain.

8. Storage.

9. Window treatments.

10. Interior Trim.

11. A/C work (if applicable).

12. Sales/Use Tax.

13. Weatherstripping on doors.

14. Thresholds for doors.