# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**WINDOW SPECIALISTS, INC.,**           )
                                        )
        **Plaintiff,**          )
                                        )
     **v.**                       )      **Civil Action No. 11-1610 (RMC)**
                                        )
**FORNEY ENTERPRISES, INC.,** *et al.*, )
                                        )
      **Defendants.**          )
_____       )

## MEMORANDUM OPINION ON ATTORNEY FEES

      Forney Enterprises, Inc. (FEI) was a contractor on an Army project at Fort McNair in Washington, D.C.  FEI subcontracted with Window Specialists, Inc. (WSI) for the installation of windows and doors on the project.  There were deficiencies in the work, and when the deficiencies remained uncured, FEI and WSI were terminated.  WSI and FEI sued one another for breach of contract.  After lengthy litigation culminating in a bench trial, the Court found in favor of each party on various claims.  As part of its Opinion, the Court determined that WSI breached the subcontract with FEI and awarded FEI nominal damages on FEI's Counterclaim.  FEI and WSI each assert that it is entitled to substantial attorney fees as the prevailing party.  While FEI was awarded nominal damages and thus is the party that "prevailed," the only reasonable fee here is none at all because FEI failed to prove its damages, an essential element of its claim.  The parties' cross motions for attorney fees will be denied.

# I. FACTS[1]

## A.  Background

The U.S. Army decided to improve historic homes for officers at Fort McNair in Washington, D.C., namely Quarters 1, 3 through 13, and 15 (the Project).  On September 22, 2010, the Army hired IIU Consulting Institute, Inc. (IIU) as the general contractor on the Project. On December 14, 2010, IIU subcontracted a portion of its work on the Project to FEI.  On January 12, 2011, FEI entered into a subcontract with WSI whereby WSI agreed to install 684 sash pack windows and 66 doors at Fort McNair.  FEI Mot. for Fees [Dkt. 68], Ex. 1 (Subcontract).

IIU obtained a performance bond on the Project, as required under the Miller Act, 40 U.S.C. §§ 3131-3134.  IIU, as principal, and Hanover Insurance Company, as surety, entered into a bond agreement.  FEI and its President, Keith Forney, were indemnitors on the bond.

In addition to acting as indemnitor on the bond, FEI's role on the Project was to process payments.  FEI did not supply labor or materials, provide an on-site supervisor, or otherwise oversee the Project.  WSI was responsible for installing the windows and doors.  IIU was responsible for removal of the old windows, preparation of the window openings, trim, caulking, and painting.  After WSI had installed approximately 100 windows and 12 doors on the Project, the Army found deficiencies in the work.  WSI and IIU attempted to cure, but failed. Subsequently, IIU terminated FEI and FEI terminated WSI.  Other than payment for its initial measuring, WSI's payment applications remained unpaid.  IIU hired another contractor to redo the work.

---

[1] The Court's detailed findings of fact, with record citations, are set forth in the bench trial Opinion filed May 14, 2015.  *See* Op. [Dkt. 63].

### B. This Litigation

On September 7, 2011, WSI filed a Complaint that set forth three counts: Count I, breach of contract against FEI; Count II, unjust enrichment against FEI; and Count III, action on the payment bond against Hanover Insurance Company.  *See* Compl. [Dkt. 1].  WSI originally sought damages in the amount of $936,967, but later reduced its claim to $626,884.  Notice of Reduction of Claim [Dkt. 17].  FEI filed an Amended Counterclaim, alleging breach of contract and indemnification.  *See* Am. Countercl. [Dkt. 23].[2]  FEI sought damages in the amount of $198,617.59, which included lost profits and FEI's obligation to pay IIU for reprocurement costs and attorney fees.  FEI Mem. in Support of Fees [Dkt. 68-1] at 3-4.

Prior to trial, the Court dismissed FEI's counterclaim for indemnification because the claim had not accrued and was not ripe for decision.  *See* Op. [Dkt. 45] at 6-7; Order [Dkt. 46].  Courts have routinely found that "indemnity claims are unripe until the alleged indemnitee's liability has been fixed by a judgment or settlement."  *Pardee v. Consumer Portfolio Servs., Inc.*, 344 F. Supp. 2d 823, 836 (D.R.I. 2004).  An indemnity claim "does not accrue until the party seeking indemnification is held liable and makes a payment."  *Casanova v. Marathon Corp.*, 256 F.R.D. 11, 14 (D.D.C. 2009).  FEI argued that its right to indemnity had accrued because it had entered into a Settlement Agreement with IIU, whereby IIU agreed to limit its recovery against FEI to the amount FEI might recover in this suit from WSI, less FEI's lost profits.  The Court found that the Settlement Agreement was a ploy to give the illusion that IIU and FEI had reached a fixed settlement, but in fact IIU's claim against FEI was not liquidated at all, as the Settlement Agreement did not set any particular sum that FEI was

---

[2] Hanover did not join in the Amended Counterclaim.

required to pay IIU, did not actually fix liability, and did not cause FEI to suffer any actual loss.

Op. [Dkt. 45] at 6-7.  The Court dismissed the indemnity claim.

Also before trial, the Court granted WSI's motion to limit FEI's claim for breach

of contract to permit recovery only of lost profits.  The Court explained:

> Forney's allegation that IIU "held" it responsible for the cost to
> correct and complete the windows and doors on the project is
> evidenced by a "settlement agreement" that does not settle anything
> at all.  IIU has not demanded payment of any particular sum from
> Forney for the costs of curing the problems; Forney has not paid IIU
> for such costs; IIU settled its claims against Forney by agreeing to
> limit its recovery against Forney to "those amounts Forney recovers
> from WSI in this litigation, less Forney's lost profits," *see* Ukoh Aff.
> ¶ 26; Settlement Agreement.  Forney's alleged injury, *i.e.* the cost
> of curing the window/door deficiencies, is not an injury in fact
> because it is not "concrete and particularized."  Also, due to the
> settlement agreement, the alleged injury is not "actual or imminent."
> Under the settlement agreement, if Forney does not recover damages
> in excess of its lost profits, it does not owe IIU anything.  Because
> Forney has not alleged an injury in fact, it lacks standing to pursue
> a claim against WSI for the costs of curing the alleged deficiencies
> on the project caused by WSI.  Forney's damages on its breach of
> contract claim will be limited to lost profits.

Op. [Dkt. 45] at 9.

On July 14 through 21, 2014, the Court conducted a bench trial.  Throughout trial,

FEI proceeded on the theory that WSI had mismeasured the window openings and had ordered

improperly-sized windows.  The Court wholly rejected this argument:

> FEI argues that WSI breached the contract by failing to measure the
> window openings properly, causing WSI to order and install sash
> packs that did not fit or function.  However, at trial there was no
> evidence to support the claim that WSI mismeasured.  Mr. Carlson
> testified how his crew carefully measured the windows and that he
> had to order the windows sized to the smallest level window opening
> due to the fact that the old window openings were not square.  While
> the Army's Ten-Day Cure Notice stated that windows were
> mismeasured, this characterization was based on the observations of
> the Malta technicians and there was no evidence that anyone
> actually measured any of the window openings and compared them
> to the sash packs.  *See* Pl. Ex. 26 (Ten-Day Cure Notice); Tr. 7/17/14

at 44 (Ukoh).  Similarly, Mr. Donnelly indicated that the windows
were too short, too narrow and too wide, *see* Def. Ex. 52 (Donnelly
Letter 9/2011) at 3, but his testimony was unsupported by any actual
re-measurement.  In fact, when the Malta technicians returned to the
Project to check the measurements, they re-measured six or seven
windows in Quarters 15 and found that WSI had correctly measured
all but one, and that single window required an adjustment of only
1/16 inch.  Tr. 7/16/14 AM at 8-11 (Witthoff).  The evidence showed
that the sash packs did not fit well due to the out-of-square, out-of-
plumb condition of the old window openings themselves, not
because WSI measured the window openings incorrectly.

Op. [Dkt. 63] at 36-37.  Instead, the Court found that WSI was liable for breach of contract

because it breached the implied covenant of good faith:

Both parties understood that the windows needed to be fit for the
specified purpose, *i.e.*, the replacement of very large windows in
very old historic buildings.  When the Army COTR, Mr. Fleming,
solicited a bid for the installation of sash pack windows, he relied
on WSI to determine whether that type of window could be installed
successfully.  The Army, FEI, and their representatives were not
window installation experts.

The Court credits Mr. Donnelly's expert opinion that sash
pack windows could not be used successfully at Ft. McNair because
the window openings were old, large, out-of-square, and out-of-
plumb.  Def. Ex. 52 (Donnelly Letter 9/2011) at 3; Tr. 7/16/14 PM
at 42 (Donnelly).  As a window installation expert, Mr. Carlson
should have known that sash pack windows would not fit or function
properly in the Quarters at Ft. McNair.  On November 1, 2010,
before WSI entered into the WSI/FEI Subcontract and before WSI
ordered the windows and doors, Mr. Carlson visited Ft. McNair to
instruct his crew on the measurement process.  Tr. 7/14/14 at 37.  At
that time, he personally observed the size of the windows and the
age of the Quarters.  In addition, Mr. Carlson reviewed the field
measurements taken by the WSI crew, and noted that when ordering
sash pack windows "there is very little room for error."  Def. Ex. 8
(Carlson Email 12/3/10 and Field Measurements).  He expressed
concern that there were well over 200 different unique dimensions
needed for the Project.  Def. Ex. 8 (Carlson Email 12/3/10 and Field
Measurements).  Because the window openings were not plumb and
square, WSI measured and ordered "the windows to fit the smallest,
level, plumb, square opening."  Pl. Ex. 27 (Carlson Letter to Ukoh
6/5/11).  After visiting the site and reviewing the measurements, Mr.
Carlson should have seen a red flag.  Nevertheless, WSI never
informed the Army, IIU, or FEI that sash pack window kits were
unsuitable for the Project.  WSI had a duty of good faith to contract

5

> for the installation of windows that were fit for the purpose intended; by agreeing to install sash pack windows, WSI breached its duty of good faith.

*Id*. at 37-38.

Because WSI materially breached the Subcontract in the first instance, FEI was relieved of its contractual obligations. *See id*. at 41 (citing *Rosenthal v. Sonnenschein Nath and Rosenthal, LLP*, 985 A.2d 443, 452 (D.C. 2010) (party to a contract has no further obligation to perform if the other party is in "material breach" and Subcontract, Art. 5.3 ("FEI is not obligated to may any payment to Subcontractor under the Subcontract if . . . Subcontractor has failed to perform its obligations under the Subcontract or otherwise is in default.")).  Accordingly, on FEI's Amended Counterclaim for breach of contract, the Court entered judgment in favor of FEI. With regard to WSI's claim for unjust enrichment, the Court found that the doors and the sash pack windows that WSI installed had no value and thus no benefit was conferred on FEI.  Op. [Dkt. 63] at 45-46.  Because no benefit was conferred, the Court found that WSI was not entitled to recover on its claim for unjust enrichment.  *Id*.

Although the Court found that WSI had breached the Subcontract, the Court awarded FEI only nominal damages.  *Id*. at 43.  FEI had been limited to lost profits, but it failed to prove any.  *Id*.; *see also* Order of Final J. [Dkt. 64].  The Court held:

> WSI breached the WSI/FEI Subcontract and therefore FEI is excused from payment.  Despite the finding of a breach, FEI will be awarded only nominal damages because it failed to prove lost profits.  Judgment will be entered in favor of FEI, and FEI will be awarded nominal damages of $1.00.

Op. [Dkt. 63] at 47.

Section 3.5.4 of the WSI/FEI Subcontract provides that, in the event of a dispute between the parties, the prevailing party is entitled to recover attorney fees and costs.[3] FEI and WSI each claim to have prevailed in this action. WSI seeks attorney fees and costs in the amount of $97,792.60. WSI Mot. for Fees [Dkt. 67]. FEI seeks attorney fees in the amount of $165,054.75 for defending against WSI's Complaint; it does not seek fees associated with pursuing its Amended Counterclaim. FEI Mot. for Fees [Dkt. 68]; FEI Mem. in Support of Fees [Dkt. 68-1].[4]

## II. LEGAL STANDARD

Parties in the United States ordinarily bear their own attorney fees regardless of the outcome of the litigation. *Fresh Kist Produce, LLC v. Choi Corp., Inc.*, 362 F. Supp. 2d 118, 125 (D.D.C. 2005). There are exceptions, however, to this so-called "American Rule." For instance, the American Rule does not apply where there is an explicit statutory basis for awarding fees, *see id*. at 125, or where a contract provides a basis for awarding fees, *see McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993).

A "prevailing party" is "one who has been awarded some relief by the court," resulting in a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603, 605 (2001).

---

[3] Section 3.5.4 of the Subcontract states:

> In the event of litigation or arbitration of any dispute between Subcontractor [WSI] and FEI, the prevailing party shall be awarded attorneys' fees; costs of court and such other damages as may be permitted by the Subcontract and applicable law.

[4] FEI erroneously claims it is entitled to fees as a prevailing party under Federal Rule of Civil Procedure 54(d)(2). *See* FEI Mem. in Support of Fees at 4. Rule 54(d)(2) does not establish a party's right to fees; it sets forth the procedure to be followed when moving for fees.

The D.C. Circuit has adopted a three-part test for adjudicating prevailing-party status: (1) a court-ordered change in the legal relationship of the parties; (2) a judgment in favor of the party seeking the fees; and (3) a judicial pronouncement accompanied by judicial relief. *See Green Aviation Mgmt. Co. v. FAA*, 676 F.3d 200, 203 (D.C. Cir. 2012). "[T]he prevailing party inquiry does not turn on the magnitude of the relief obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). A judgment for damages in any amount, even if merely nominal, modifies the parties' relationship by forcing the losing party to pay an amount of money he otherwise would not pay. *Id.* at 113. Thus, a party who is awarded nominal damages is a "prevailing party."

If a party establishes that it is a prevailing party entitled to attorney fees, then the question becomes whether the fees sought are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), *abrogated on other grounds by Gisbrecht v. Barnhart*, 535 U.S. 789, 795-805 (2002). "The usual method of calculating reasonable attorneys' fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Bd. of Trs. of Hotel & Restaurant Employees Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998).

However, in circumstances where a party has obtained only nominal damages, the nominal award bears on the propriety and amount of fees to be awarded. *Farrar*, 506 U.S. at 114. The "most critical factor" in determining the reasonableness of a fee award is "the degree of success obtained." *Id.* at 114 (quoting *Hensley*, 461 U.S. at 436). In *Farrar*, a jury determined that a defendant had deprived the plaintiff of his civil rights in violation of 42 U.S.C. 1983, but the plaintiff had failed to prove that the violation caused any damages. *Farrar*, 506 U.S. at 106-07. The plaintiff was awarded nominal damages and then sought attorney fees as a prevailing party under 42 U.S.C. § 1988. The Supreme Court explained that where the purpose

8

of litigation is to recover damages, a court should compare the amount sought with the amount awarded.  *Id*. at 114.  The plaintiff in *Farrar* sought $17 million in compensatory damages and was awarded only nominal damages.  The Supreme Court determined that the *Farrar* plaintiff was not entitled to any fees because "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of this claim for monetary relief, the only reasonable fee is usually no fee at all."  *Id*. at 116 (citation omitted).

### III. ANALYSIS

WSI cannot be considered a prevailing party in this litigation.  While WSI succeeded in dismissing FEI's claim for indemnification and in limiting FEI to a claim for lost profits, WSI did not prevail on the claims in its Complaint—for breach of contract, unjust enrichment, or for payment on the surety bond.  Because WSI did not prevail on its Complaint, its motion for attorney fees and cost will be denied.

FEI prevailed in part on the claim for breach of contract set forth in the Amended Counterclaim.  The Court found that WSI breached the Subcontract and awarded FEI nominal damages of $1.00.  Despite the fact that FEI prevailed, it is not entitled to recover attorney fees.  The purpose of FEI's Amended Counterclaim was to recover damages in the amount of $198,617.59, but FEI recovered only $1.00.  The most critical factor in determining the reasonableness of fees is the degree of success obtained and FEI only achieved a recovery of $1.00; a reasonable fee in this case is no fee at all.  *See Farrar*, 506 U.S. at 116.

Relying on pre-*Buckhannon* circuit case law, FEI argues that it does not assert prevailing status because it was successful in obtaining nominal damages on its Amended

Counterclaim[5] but that it prevailed because it won in defending the Complaint, *i.e.* it was not found liable for breach of contract or unjust enrichment and it was not ordered to pay WSI's claim for $626,884.  *See* Mem. in Support of Fees at 6 (citing *Official Aviation Guide Co. v. Am. Aviation Assoc.*, 162 F.2d 541, 543 (7th Cir. 1947); *Scientific Holding Co. v. Plessey Inc.*, 510 F.2d 15, 28 (2d Cir. 1974)).  *Buckhannon* defined a "prevailing party" as "one who has been awarded some relief by the court," resulting in a "judicially sanctioned change in the legal relationship of the parties."  532 U.S. at 603, 605.  The D.C. Circuit has explained further that a prevailing party must have obtained a judgment or judicial pronouncement accompanied by relief.  *Green Aviation,* 676 F.3d at 203.  Because FEI did not obtain a judgment and was not awarded relief on WSI's Complaint, FEI did not prevail on the Complaint.  Instead, FEI obtained a judgment and was awarded nominal damages on its Amended Counterclaim; that is, FEI prevailed, in part, on its Amended Counterclaim.[6]  To reiterate: the only reasonable attorney fee for the award of nominal damages on FEI's Amended Counterclaim is no fee at all.  FEI's claim for fees will be denied.

## IV. CONCLUSION

As explained above, WSI's motion for attorney fees and costs [Dkt. 67] will be denied.  Further, FEI's motion for fees [Dkt. 68] will be denied.  This Memorandum Opinion is accompanied by a memorializing Order.

---

[5] FEI reduced the amount of fees sought by charges attributable to work on the Amended Counterclaim.

[6] It should be noted that FEI succeeded in defending against the Complaint through no argument advanced by its attorneys.  FEI argued that WSI breached the Subcontract because WSI mismeasured the windows, but there was no evidence to support this theory.  *See* Op. [Dkt. 63] at 36-37.  WSI's liability hinged on the Court's finding that WSI breached its duty of good faith, a theory of liability never raised by counsel for FEI.

Date: June 18, 2015                         _____/s/_____
                                            ROSEMARY M. COLLYER
                                            United States District Judge